**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| JOHN MILEUSNIC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | NO. 2:19-cv-427 |
| | ) | |
| PAUL R. CHAEL, Trustee, | ) | |
| | ) | |
| Appellee. | ) | |

## OPINION AND ORDER

This is a bankruptcy appeal that stems from the Bankruptcy Court's dismissal of

John Mileusnic's Chapter 13 case due to his failure as the debtor to make Plan

payments.  Mileusnic, who represents himself in this appeal, believes that the mortgage

on his home was really owned by a different entity than the company that filed a Proof

of Claim in his bankruptcy case.  Nevertheless, that is no excuse for failing to make the

requisite Plan payments.  Because I find the Bankruptcy Judge did not abuse his

discretion in dismissing Mileusnic's Chapter 13 bankruptcy case under 11 U.S.C.

§1307(c)(4) for failure to make Plan payments, the Bankruptcy Court's decision is

affirmed.

### Background

Mileusnic, the debtor, filed a Chapter 13 case on April 4, 2019.  [DE 1, Case No.

19-20831.][1]  On April 18, 2019, Mileusnic filed a Chapter 13 Plan.  [DE 16.]  In the Plan,

Mileusnic agreed to pay only $10 per month to the Chapter 13 Trustee starting on April

18, 2019, for 60 months. [*Id.*]  Mileusnic listed PennyMac in Schedule D as a mortgage

holder on his home at 325 Plum Creek Drive, Schererville, Indiana.  [DE 13 at 16.]

On June 13, 2019, PennyMac timely filed a Proof of Claim showing a mortgage

on the Debtor's home in the amount of $301,634.02, with a prepetition arrears of

$123,312.51 and a monthly payment of $1,585.51. [POC No. 2-1.] Debtor's Schedule I

shows a net household income of $2,097.00 per month and Schedule J shows a mortgage

payment of $1,586.00. [DE 13 at 29-30.]

On June 27, 2019, the Trustee filed a motion to dismiss the bankruptcy case for

failure to commence plan payments, but that was withdrawn on July 9, 2019. [DE 23.]

Indeed, it seems Mileusnic made four payments of $10.00 towards the Plan. [DE 75.]

On August 7, 2019, PennyMac filed a Motion to Dismiss Debtor's Chapter 13 case

pursuant to 11 U.S.C. § 1307(c)(4), arguing Mileusnic failed to account for PennyMac in

the Plan, failed to make any post-petition payments to PennyMac, and alleging its pre-

petition value of the collateral would decrease during the estate administration due to

depreciation caused by Mileusnic's use. [DE 33.] Mileusnic filed a response on August

20, 2019, arguing that although PennyMac claims to be the current holder of the

promissory note and mortgage and claims the chain of assignments, another entity was

---

[1] Citations are to the bankruptcy case in the United States Bankruptcy Court for the Northern District of Indiana (Hammond Division), No. 19-20831, unless otherwise noted.

the true owner of the note/mortgage.  [DE 37.]  Nevertheless, Mileusnic did state he

was "willing to setup payments with the trustee."  [DE 37 at 3.]

On August 28, 2019, Mileusnic filed an Amended Plan which stated that "Debtor

will make regular payments to the Trustee as follows: $1,685.51 per month for 60

months."  [DE 42 at 1.]  The Amended Plan provided for ongoing mortgage payments

to PennyMac Loan Services, LLC ("PennyMac") in the amount of $1,585.51 per month

and a payment to Capital One Auto Finance for a car loan of $100.00 per month. [DE 42

at 2.]

On September 16, 2019, the Chapter 13 Trustee filed a Motion to Dismiss for

failure to make Plan payments under 11 U.S.C. § 1307(c) on the grounds that Mileusnic

failed to timely commence Plan payments. [DE 50.]  According to the Trustee's motion,

the monthly payment under Debtor's Chapter 13 Plan was $1,685.51 and the amount of

default at the time of the Trustee's motion to dismiss had grown to $8,377.55. [*Id.*]

A pre-hearing conference was held on PennyMac's motion to dismiss on

September 16, 2019, at which Mileusnic appeared pro se, and the Trustee and

PennyMac's counsel also appeared. [DE 53.] Although Mileusnic claims in his appeal

that he only saw a copy (never the original) of the Note and Mortgage, PennyMac's

counsel represents that he brought the original Note and Mortgage to the pre-hearing,

where Mileusnic physically examined the original documents in open court. [DE 71 at 2-

3.]

A final hearing on PennyMac's Motion to Dismiss and the Trustee's Motion to

Dismiss for default in Plan payments was held on October 28, 2019. [DE 61.] At the final

hearing, Mileusnic appeared *pro se*, Trustee Chael appeared, PennyMac appeared by

counsel, and Capital One Auto Finance appeared by counsel. [DE 74.] The Trustee filed

an Affidavit and Status Report.  The Report shows monthly Plan payments required of

$1,685.51 and a default in Plan payments of $10,043.06. [DE 75.] The Report disclosed

that Mileusnic had only made Plan payments totaling $70.00 (four payments of $10 and

one payment of $30).  [*Id.*]

The day after the hearing, on October 29, 2019, the Bankruptcy Court entered an

Order on both the Trustee's and PennyMac's Motions to Dismiss dismissing the

Debtor's Chapter 13 Petition for Default in Plan payments pursuant to 11 U.S.C. § 1307.

[DE 76.]  The judge determined Mileusnic to be in arrearage on the Plan in the amount

of $10,043.00 as of October 28, 2019, and stated he found "there has been a material

default by the Debtor as to the terms of the Plan, a failure by the Debtor to commence

making timely payments, and/or that there has been an unreasonable delay by the

Debtor that is prejudicial to creditors."  [*Id.*]

Mileusnic filed the instant notice of appeal on November 5, 2019.  He argues that

PennyMac was not the true owner of the Note/Mortgage on his house, and it never

proved the chain of title in endorsement.  Therefore, according to Mileusnic, PennyMac

cannot enforce the Plan payments.  I held a telephonic oral argument in this matter on

May 5, 2020, during which Trustee Chael and Mileusnic participated and provided

argument.

**Discussion**

In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. § 158(a), the

district court functions as an appellate court and is authorized to affirm, reverse,

modify, or remand the bankruptcy court's ruling.  Fed. R. Bankr. P. 8013.  The standard

for review of bankruptcy court decisions depends upon the issue being reviewed.

Findings of fact are upheld unless clearly erroneous, but legal conclusions are reviewed

*de novo*.  *Id.*; *In re Marrs-Winn Co., Inc.*, 103 F.3d 584, 589 (7th Cir. 1996).  Dismissals of

bankruptcy petitions, like this case, are reviewed for an abuse of discretion.  *In re Hall*,

304 F.3d 743, 746 (7th Cir. 2002); *In re Matter of McDonald*, 118 F.3d 568 (7th Cir. 1997).

In reviewing for abuse of discretion, I have to reverse where a bankruptcy court's

"decision is premised on an incorrect legal principle or a clearly erroneous factual

finding, or when the record contains no evidence on which the court rationally could

have relied."  *In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004); s*ee also Corp. Assets, Inc.*

*v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).  Whether I agree with the bankruptcy

judge's decision is beside the point as long as the decision is within the range of options

from which one would expect a reasonable trial judge to select.  *Liu v. Price Waterhouse*

*LLP*, 302 F.3d 749, 754 (7th Cir. 2002).  It is for this reason that the pro se debtor,

Mileusnic, faces an uphill challenge in trying to convince me that Judge Ahler abused

his discretion.  *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002).

Mileusnic represented himself during the underlying bankruptcy, and now on

appeal as well.  Although a pro se litigant should be accorded a substantial degree of

leniency, the court's procedural and substantive rules still do "apply to uncounseled

litigants and must be enforced." *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998).

A Debtor who files a Chapter 13 Bankruptcy is required to make Plan payments

to the Trustee pursuant to section 1326(a)(1)(A).  Under this provision, the Debtor must

make the first payment to the Trustee within 30 days after filing the Bankruptcy

Petition.  That section specifically provides:

> Unless the Court orders otherwise, the debtor shall commence
> making payments not later than 30 days after the date of the filing
> of the plan or the order for relief, whichever is earlier, in the
> amount - (A) proposed by the plan to the trustee.

11 U.S.C. 1326(a)(1)(A). Pursuant to 11 U.S.C. § 1307(c)(4), a Chapter 13 proceeding is

subject to dismissal if the debtor fails to timely commence making Plan payments.

Here's what that section provides:

> Except as provided in subsection (f) of this section, on request of a
> party in interest or the United States trustee and after notice and a
> hearing, the court may convert a case under this chapter to a case
> under chapter 7 of this title, or may dismiss a case under this
> chapter, whichever is in the best interests of creditors and the
> estate, for cause, including . . . . (4) failure to commence making
> timely payments under section 1326 of this title . . . .

11 U.S.C. § 1307(c).[2]

In this case, Paul R. Chael was appointed by the bankruptcy court to serve as

Trustee.  One of the Chapter 13 Trustee's duties is to make sure the Debtor starts (or

---

[2] Although this section provides that the court could convert the Chapter 13 proceeding to one under Chapter 7 as an alternative to dismissal, there is no evidence in the record that Mileusnic asked the Bankruptcy Judge to convert the proceeding to one under Chapter 7, and he makes no argument in his appellate brief that the judge should have done so.

commences) making timely payments under Section 1326 of the Bankruptcy Code. *See* 11 U.S.C. §1302(b)(5). If they do not, the Trustee has authority under section 1307(c)(4) to file a motion to dismiss the debtor's case for failure to make timely Plan payments. And indeed, Mr. Chael filed a motion to dismiss in this case.

Mileusnic filed his Bankruptcy Petition on April 4, 2019, so his first Plan payment was due on May 4, 2019. 11 U.S.C. 1326(a)(1)(A). Now, under the original Plan, Mileusnic only agreed to pay $10 per month, and there is evidence that he paid those small installments for several months. However, on August 28, 2019, Mileusnic amended the Plan and agreed to pay $1,685.51 per month for 60 months. According to what Trustee Chael told me during the oral argument, because the bankruptcy law provides that a Plan may only last up to 60 months, *see* 11 U.S.C. §§ 1329, 1322(d)(1), when Mileusnic filed his Amended Plan and agreed to pay $1,685.51 per month for 60 months, the Trustee interpreted this as an agreement that Mileusnic would retroactively pay $1,685.51 per month from the time the Plan began. Frankly, I'm not so sure how fair this assumption is on the part of the Trustee. And if Mileusnic had counsel, he or she probably would have built in a provision stating the Debtor could cure the arrearage that went back to the original start of the Plan over time. But that is not what happened in this case.

According to the Trustee, under the terms of the Debtor's Chapter 13 Plan, Mileusnic was past due on six monthly payments at the time of the final hearing on the Motion to Dismiss for Default in Plan Payments (October 28, 2019). [DE 42.] The

Appellant's brief claims that Mileusnic was $8,77.55 behind in Plan payments at the time the Motion to Dismiss was filed, which had snowballed into $10,043.06 in arrears at the time of the final hearing, a month later.  It is important to note that Mileusnic did not raise this issue with the bankruptcy court and never argued that he only owed a few months of payments in the amount of $1,685.51 per month at the time of the hearing, and was not 6 payments behind.  In both his response to the motion to dismiss and in this appeal, Mileusnic states he "is willing to deposit 'Amount of default: $8,377.55, Amount due per month: $1,685.51' in escrow or with Trustee with an understanding that this amount will NOT be released to Creditors unless this Court decides on the question of Validation of Debt." [DE 65 at 10; DE 4, Case No. 2:19-cv-427.] Therefore, he has basically acknowledged the default in the full amount that the Trustee claimed in the bankruptcy court.  Mileusnic certainly has not contested the amount of default or brought this matter to my attention.

Even if I don't buy the Trustee's assumption that the Amended Plan agreed to retroactively pay $1,685.51 a month, and Mileusnic was therefore six months behind at the time of the hearing, Mileusnic still missed a couple of payments after the Amended Plan was made and clearly had not adhered to the Amended Plan. The Amended Plan is dated August 28, 2019, and the hearing was October 28, 2019, so at a minimum, two payments of $1,685.51 each were due.  Yet Mileusnic had only paid $70.00 total into the Plan since inception.  The Debtor's payment of $70.00 towards the total amount (whether we calculate it from the beginning of the Plan or from the Amended Plan), is

still paltry and tells me he was not seriously trying to make the payments.  Even if

Mileusnic was in default for a smaller amount of money than the Trustee claimed, he

was still significantly behind in his Plan payments.  So I cannot say that the bankruptcy

judge abused his discretion in dismissing this case.

In a similar case involving nonpayment, the Seventh Circuit found the

Bankruptcy Court did not abuse its discretion in dismissing a Chapter 13 case after the

debtor missed the deadline for making the initial payment on the plan.  *Matter of

McDonald*, 118 F.3d 568 (7th Cir. 1997).  As that Court recognized, "Debtors enter

Chapter 13 delinquent in payments to creditors.  If the new plan is to succeed, they

must change their ways.  It is best to discover, as quickly as possible, which debtors are

willing and able to follow the plan."  *Id.* at 568-69.  The Bankruptcy Court has the

discretion to ensure that debtors make the first Plan payment on time.  *Id.*  To the extent

Mileusnic did pay $70 toward the Plan payments, "[c]ourts considering situations in

which a debtor commenced making payments but then either stopped or paid less than

the plan required have considered the text of section 1307(c)(4) and concluded that a

failure to *continue* making payments as required by the plan is cause for dismissal."  *In

re Mallory*, 444 B.R. 553, 558 (S.D. Tex. 2011) (emphasis in original); *see also Chapman v.

Citicorp Mortg., Inc.*, No. 92 C 2862, 1992 WL 157499, at *3 (N.D. Ill. June 23, 1992) (same).

The Bankruptcy Court could have dismissed this case solely on the Trustee's

Motion to Dismiss.  And a dismissal under Section 1307(c)(4) requires the district judge

to indulge in a firm presumption against reopening.  *McDonald,* 118 F.3d at 569 (citing

9

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 393 (1993); *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826 (7th Cir. 1985)).

Recall, though, that PennyMac also filed a Motion to Dismiss.  This is where Mileusnic's true argument lies – he contends that PennyMac did not have standing and was not a real party in interest.  This argument is largely immaterial since the Bankruptcy Judge had the power and discretion to dismiss the case on the Trustee's motion to dismiss.  But because Mileusnic's brief insists the issue for review is whether PennyMac could enforce the Mortgage and Promissory Note, I will address it.

PennyMac did have standing.  The Proof of Claim, with a copy of the Note and Mortgage and the chain of endorsements attached, shows that the note was assigned to PennyMac on November 27, 2018, and recorded with the State of Indiana, Lake County Recorder's Office on December 13, 2018. [POC No. 2-1, at 40-41.] If Mileusnic really doubted that PennyMac held title to the Mortgage and Note, he should have filed an objection to the Proof of Claim to seek determination from the court on PennyMac's standing, instead of just not making payments to the Trustee.  *See In re Mallory*, 444 B.R. at 558 (holding debtor's failure to make payments to trustee constituted cause for dismissal of case, notwithstanding debtor's argument that he stopped making payments to prevent trustee from making distributions to an entity that had not established a clear chain of title to mortgage note).  Mileusnic's desire to litigate PennyMac's standing doesn't excuse his obligation to make payments to the Trustee on account of the secured loan.  *See In re Tornheim*, 239 B.R. 677, 687 (Bankr. E.D.N.Y. 1999)

10

(finding debtor's "almost talismanic mantra that he does not know who holds the Mortgage or how much to pay" did not justify suspension of payments).

Mileusnic had four months from the time PennyMac filed its Proof of Claim in June until his bankruptcy was dismissed in October.  If he truly believed PennyMac was the wrong party, he should have filed an objection to PennyMac's Proof of Claim, and yet he failed to do so.  As such, it was not an abuse of discretion for the Bankruptcy Judge to grant PennyMac's Motion to Dismiss the bankruptcy case, alongside also granting the Trustee's Motion to Dismiss.

## Conclusion

For the reasons set forth above, the Bankruptcy Court's Order dated October 29, 2019, dismissing Mileusnic's Chapter 13 bankruptcy case under 11 U.S.C. section 1307(c)(4) for failure to make Plan payments is AFFIRMED.

SO ORDERED.

ENTERED: May 8, 2020.

> s/   Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT

11